# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICKY Z. ROBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-161-RAW-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Ricky Z. Robson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born March 26, 1961, and was forty-eight years old at the time of the administrative hearing. (Tr. 26, 123). He completed the ninth grade (Tr. 134), and has no past relevant work. The claimant alleged inability to work since April 1, 2007, due to leg injuries, shoulder disorder, and a staph infection in his leg. (Tr. 129-130).

**Procedural History**

On April 30, 2007, the claimant protectively filed for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 123-125). His application was denied. ALJ Glenn A. Neel conducted an administrative hearing and ALJ Osly F. Deramus (writing for ALJ Neel) determined that the claimant was not disabled in a written opinion dated November 19, 2009. (Tr. 9-17). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of sedentary work, 20 C.F.R. §416.967(b), *i. e.*, he could lift/carry ten pounds frequently, stand/walk two hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. (Tr. 15-16). The ALJ concluded that although the claimant had no past relevant work, he was

nevertheless not disabled under the Medical-Vocational Guidelines, *i. e.*, "the Grids." (Tr. 16-17).

**Review**

The claimant contends that the ALJ erred by: i) improperly relying on the Grids at step five, and (ii) failing to properly evaluate his credibility. In support of his first contention, the claimant argues that the ALJ failed to properly consider his pain in accordance with Social Security Ruling 03-2p and failed to identify substantial evidence showing his pain would be insignificant if not for addictive pain medications. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly evaluate the claimant's pain under Soc. Sec. Rul. 03-2p, and the decision of the Commissioner should therefore be reversed.

According to the medical evidence, the claimant had the severe impairments of generalized osteoarthritis, complex regional pain syndrome (CRPS), hepatitis C, and status post remote cerebrovascular accident. (Tr. 11). In November 2004, the claimant went to the hospital after collapsing, being unable to move his right side, and having garbled speech. (Tr. 169). At that time, the hospital noted that the claimant's medical history included a motorcycle accident at age 18; hardware placed in both hips, but only remaining in the left hip at that time; hospitalization the previous year for a septic left hip, and arthroscopic surgery of the right knee. (Tr. 169). A CT scan of his brain revealed a hematoma, but no surgery was performed and the claimant left the hospital against medical advice. (Tr. 176). He returned to the hospital within a week,

complaining of severe pain and requesting Demerol, but the emergency room doctor would only give him morphine. The claimant refused the morphine and demanded Demerol, and when the Demerol was refused, he again left the hospital. (Tr. 176). During this medical stay, the claimant also tested positive for hepatitis C. (Tr. 179). Notably, numerous medical records indicate that the claimant's treating physician Dr. R. J. Helton treated him for his hematoma when he was not in the hospital, but no records from Dr. Helton were made available as part of the administrative record. (Tr. 185).

In August 2006, the claimant was referred to Dr. Amar Bhandary for pain management. (Tr. 211). On September 16, 2006, Dr. Bhandary stated that the claimant was experiencing "considerable pain in his legs" due to his old injuries, osteoarthritis of knee joint, and complex regional pain syndrome of his left lower extremity. At that time, the claimant stated that he was not depressed and was sleeping well. (Tr. 215). Dr. Bhandary's treatment notes, which go through May 2009, indicate that the patient reported that the pain medication helped, but that he still experience bouts of increased pain, muscle spasms, and depression, though the notes reflect that those were not constant. (Tr. 217-225, 258-261, 271-291). Several times, Dr. Bhandary described the claimant's pain syndrome and osteoarthritis as under "relative control," but always noted that physical activities would exacerbate his pain. (Tr. 258-261, 271-291).

On August 21, 2007, a consultative examiner assessed the claimant with cerebral vascular accident with residual weakness on the right upper and lower extremity, poorly-controlled hypertension, tobacco abuse, and lower back pain. (Tr. 229). The following

month, a state reviewing physician completed a Psychiatric Review Technique, finding that the claimant had non-severe depression due to chronic pain and life situation. The state physician noted that the claimant had not been diagnosed with depression, but that his pain medications also treated depression. (Tr. 237-246). Another state reviewing physician completed a physical RFC assessment, finding that the claimant could do light work, but that his RFC was limited by pain. (Tr. 249-250).

At the administrative hearing, the claimant testified that he had separated his shoulder twelve years previously; had a brain hemorrhage in 2004; pins in both hips, his left wrist, and a finger; and that he takes a generic of Demerol for pain, or otherwise he "can't hardly stand" the pain. (Tr. 27-29, 32). He further testified that he has problems with his right leg swelling and he frequently has to elevate it to prevent the swelling; that he could stand approximately thirty minutes before his legs began swelling; that he thought he could walk about a block before his knees would get weak and his pain increased; that he frequently falls; and that sitting for more than an hour causes increased back pain. (Tr. 33-36). He further stated that he has difficulty sleeping, and that he does chores around the house but has to take frequent breaks. (Tr. 37-39).

In his written opinion, the ALJ summarized the medical evidence and the claimant's hearing testimony, including the claimant's monthly pain treatments, pain medication management with Dr. Bhandary, and Dr. Bhandary's notes that the claimant's pain was controlled and his functions had improved. (Tr. 13-14). Additionally, the ALJ noted the claimant had previously been addicted to methamphetamine and stated that the

claimant "appears to be addicted to pain medications." (Tr. 15). The ALJ then found that, in light of Dr. Bhandary's records, "inconsistencies" in the record, the claimant's history of illegal and prescription drug addiction, his treatment, and his work history, the claimant's sedentary RFC was supported by the record (Tr. 16).

"The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience. *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). "An ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. Each of these findings must be supported by substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Thus, use of the grids is inappropriate when a claimant has a nonexertional impairment, unless the ALJ can support a finding that the nonexertional impairment is insignificant. *Id.* at 1490-91; 20 C.F.R., pt. 404, subpt. P, app.2, § 200.00(e). If an ALJ cannot rely conclusively on "the grids," he "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country." Soc. Sec. Rul. 96-9p, 1996 WL 374185 at *5.

The claimant contends that the ALJ erred in applying "the grids" to determine he was disabled because his severe impairment of CRPS caused a significant nonexertional impairment, *i. e.*, pain. "Pain, even if not disabling, is still a nonexertional impairment to

be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.2d at 1488, *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). According to Social Security Ruling 03-2p, when a claimant has CRPS, "the adjudicator can reliably find that pain is an expected symptom in this disorder." Soc. Sec. Rul. 03-2p, "Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome," 2003 WL 22399117 at *6 (Oct. 20, 2003). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Additionally, "[c]areful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Rul. 03-2p, 2003 WL 22399117 at *7, *citing* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996) and Soc. Sec. Rul. 96-8p, Soc. Sec. Rul. 96-8p, 1996 WL 374184 (July 2, 1996).

In this case, the ALJ found that the claimant had a severe impairment causing pain, namely CRPS. Although the ALJ thus was required to consider the claimant's assertions of pain and the extent to which they were disabling, *see Winfrey v. Chater*, 92

F.3d 1017, 1020 (10th Cir. 1996); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), he made no specific findings as to the claimant's pain, instead concluding that the "claimant's allegations pertaining to the severity of his symptoms and functional limitations are not supported by the medical evidence, and are not credible." (Tr. 13). *See Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication.") [citations omitted].

While the ALJ failed to account for the claimant's pain (disabling or otherwise) in applying the Girds, he compounded this error by citing notes that the claimant's pain was "well controlled" by medication and simultaneously opining that the claimant "appears to be addicted to pain medications." (Tr. 15). "It is Congressional policy that the social security laws not be applied to perpetuate drug addiction. . . . [T]he ALJ cannot discredit a claimant's assertions of disabling pain by relying on h[is] use of medicines to which the medical evidence clearly indicates [he] is addicted, and which [he] should have long ago stopped taking, but which presently provide adequate pain relief." *Saleem v. Chater*, 86 F.3d 176, 179-180 (10th Cir. 1996). The Commissioner argues that the evidence does not support a finding that the claimant is presently addicted to pain medications, but that he was addicted to methamphetamines in the past and was only previously addicted to

Demorol (the same medication he continued to take for pain). But that was not the ALJ's finding, and "addiction is not 'effective control' of pain." *Saleem*, 86 F.3d at 180.

Because the ALJ failed to properly account for the claimant's pain, the Commissioner's decision is reversed and the case is remanded to the ALJ for further analysis. Upon proper analysis, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma